AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A BLACK SAMSUNG CELLPHONE AND<br>SAMSUNG FOLDING CELLPHONE | )<br>)<br>)  Case No.  8:22-cr-918-JDA<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A to the Affidavit submitted in support of this Application.

located in the _____ District of ____South Carolina____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B to the Affidavit submitted in support of this Application.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | PWID Controlled Substances |
| 21 U.S.C. § 843 | Unlawful Use of a Communication Facility |
| 21 U.S.C. § 846 | Conspiracy to PWID Controlled Substances |

The application is based on these facts:
**See attached affidavit**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Matthew McDonald
*Applicant's signature*

Matthew McDonald
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____Telephone____ *(specify reliable electronic means)*.

Date: 04/18/2022

*Judge's signature*

City and state: Greenville, South Carolina    Jacquelyn D. Austin, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF A ) | MISC. NO.: | 8:22-cr-918-JDA |
| BLACK SAMSUNG CELLPHONE AND ) | | |
| SAMSUNG FOLDING CELLPHONE ) | | |
| ) | | |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Task Force Officer Matthew McDonald, Drug Enforcement Administration (DEA), being duly sworn, depose and state the following:

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is an affiant empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have been employed as a deputy with the Anderson County Sheriff's Office (ACSO) in Anderson, South Carolina since 2009. For four years, I fulfilled the duties of a detective, assigned to the ACSO Narcotics Unit. In January of 2017, I was assigned to the DEA as a Task Force Officer (TFO). Prior to my service in law enforcement, I was a member of the United States Air Force and worked for nine years as a military police officer.

2. During my time as a drug investigator, I have written numerous search warrants and arrest warrants, purchased narcotics while working in an undercover capacity, and frequently utilized the services of informants, and other confidential sources of information. I have served as the lead case agent in numerous narcotics investigations. I have written and submitted to the court numerous affidavits in support of pen registers, electronic tracking device (ETD) warrants, orders authorizing the release of geo-location data, and Title III interceptions. I have also installed and monitored numerous ETDs during my tenure with the DEA. I am familiar with the ways in which individuals involved in drug trafficking conceal, convert, transmit, and transport their illegal

proceeds, including, but not limited to, the use of couriers and other third parties. I know that individuals involved in drug trafficking and money launderers hide bulk currency, financial instruments, documents relating to financial transactions, jewelry, automobiles, other items of value, and other proceeds, all of which constitute evidence of illegal activities.

3. As part of the aforementioned criminal investigations, I have training and experience dealing with electronic evidence, and I have prepared multiple search warrant affidavits supporting warrants for information maintained by telephone and internet service providers and authorizing forensic searches of cellular telephones, and other electronic devices. I am familiar with much of the terminology and distribution methods used by drug traffickers and those involved with financial fraud. I have received training, both formal and informal, in the investigation of violations of controlled substance offenses, including several schools regarding general narcotics investigation. In addition, I have completed nine weeks of initial police training and undercover narcotics training at the South Carolina Criminal Justice Academy in Columbia, South Carolina. In August of 2017, I completed DEA's Task Force Officer training in Atlanta, Georgia and in September of 2019, I attended a DEA money laundering seminar. I have participated in the investigation, arrest, and prosecution of numerous drug traffickers.

## ITEM TO BE SEARCHED

4. This affidavit is being submitted in support of an application for a search warrant of the two wireless telephones (hereinafter referred to collectively as the TARGET DEVICES) seized following the arrest of Arturo SOLIS on February 23, 2022. The devices are more particularly described as follows, as well as in Attachment A:

    a. One Black Samsung cellphone SM-F711U, S/N R5CRC4C4FTB, IMIE 1: 350345703952163
    b. One Black Samsung folding cellphone

2

5. Based upon my training and experience as a narcotics agent, I know the following:

   a. Drug traffickers regularly maintain and use wireless telephones (frequently multiple telephones), which are used in furtherance of a multitude of illegal endeavors including but not limited to smuggling, distribution, and money laundering.[1]
   b. Drug traffickers frequently purchase such telephones as pre-paid devices (not requiring the consumer to provide identification at the time of purchase), which allow the respective trafficker to maintain the devices in relative anonymity.
   c. Wireless telephones maintained by drug traffickers regularly contain electronic directories which denote the names (or pseudonyms), photographs, telephone numbers, e-mail addresses, etc. of coconspirators. These directories also frequently link pre-paid telephone numbers to a name or pseudonym.
   d. Wireless telephones maintained by drug traffickers often contain an electronic log, denoting calls (placed, answered, or unanswered) made from or received by the respective device, which could demonstrate patterns or relationships with other telephone numbers, which could constitute evidence of criminal activity.
   e. Wireless telephones maintained by drug traffickers often contain historical location data denoting places where the device in question has been located in the past, including locations relevant to criminal activity, such as stash houses. Such data could be maintained in GPS mapping programs, or embedded in photographs or videos.
   f. Drug traffickers often utilize short message service (hereinafter SMS, and commonly known as "texting") as opposed to traditional voice calls, in order to avoid telecommunications wherein the trafficker's voice could be recognized by

---

[1] Drug traffickers will often maintain one or more "clean" telephones (devices used for non-drug related calls), and one or more "dirty" telephones (usually pre-paid devices, specifically obtained for drug-related communications) at the same time. Although the devices are purchased with the specific intent of keeping their prescribed uses separate and distinct, rarely are drug traffickers so disciplined that they do not leave any drug-related evidence (whether it be call logs, text messages, mapping history, or name/number associations in the electronic directory of a device) on their "clean" telephone.

3

      law enforcement agents conducting a wiretap, and to make further use of coded messaging, designed to thwart detection or investigation by law enforcement.

   g. Drug traffickers and drug couriers frequently maintain contact with one another (either by telephonic/SMS contact, or through the use of GPS devices installed within a telephone) in order to ensure the integrity of smuggled drugs or drug proceeds while the contraband is in transit.

   h. Drug traffickers often take photographs or videos of drugs, drug proceeds, or other potentially incriminating items (i.e. criminal associates, automobiles, locations including but not limited to stash houses, etc.), using the photograph/video function commonly installed in wireless telephones.

   i. Drug traffickers regularly store voicemail messages from coconspirators (which would be evidence of criminal activity) in the memory components of wireless telephones.

6. Not all of the criminal intelligence gathered in regard to the drug-related activities of the SUBJECTS OF INVESTIGATION is included in this affidavit, but rather, only those facts which I believed to be necessary to establish probable cause to obtain search warrants for the TARGET DEVICES.

## BACKGROUND INVESTIGATION

7. In September of 2020, agents identified a group of individuals working with one another to distribute narcotics in and around Anderson, SC hereinafter referred to as the Dillinger BOLDEN Drug Trafficking Organization or DBDTO. While conducting this investigation agents determined members of the DBDTO were distributing marijuana, methamphetamine and cocaine. Additionally, other members of the organization maintained more specific roles such as operating store house or stash locations in support of the DBDTO.

8. Agents utilized a multi-faceted investigative approach which included physical surveillance and electronic surveillance such as telephone tracking, vehicle mounted

4

tracking devices, social media search warrants, physical location search warrants, refuse retrievals and the interception of communications over multiple telephone lines. One of the intercepted telephone lines (864) 359-0174 (hereinafter referred to as TT#27) was utilized by Eric SCOTT.

## SEARCH WARRANTS
## 1327 VANDALE PLACE

9. In August 2021, agents executed multiple federal search warrants at locations related to this organization. Specifically, on August 12, 2021, agents executed a federal search warrant 1327 Vandale Place Anderson, SC. During the investigation, agents learned that the residence belonged to family members of Tyrone DUBOSE who was a member of the DTO. During the execution of the aforementioned warrant, agents located approximately 8 kilograms of cocaine in a black trash bag in the trunk of a vehicle. Vehicle records indicated that this vehicle was purchased by SCOTT (through his used car business) several months prior to being found with the cocaine inside. To date, Agents have not located any further sales or ownership records of the vehicle.

10. As the investigation continued, agents obtained fingerprints from the black trash bag which contained the previously described kilograms of cocaine. Agents confirmed that latent prints from the bag belonged to Arturo SOLIS. Agents also located SCOTT's fingerprints on the outside of the vehicle truck.

11. During the investigation into SOLIS' background, agents learned that on October 19, 2021, SOLIS was the driver of an 18-wheeler which was pulled over by a Victoria County Texas Sheriff's deputy. During the traffic stop, a canine alerted on the attached trailer. A subsequent search yielded the discovery of a hidden after-market compartment. A search of the hidden compartment found it to be empty. SOLIS and the passenger of the truck (Rocky VALLEJO) were arrested for possession of a criminal instrument (the hidden compartment). A review of the incident report related to SOLIS's arrest indicated that SOLIS provided the (956) 641-6610 hereinafter referred to as SOLIS TELEPHONE as his contact number. AT&T records confirmed the subscriber for the SOLIS

TELEPHONE was Arturo SOLIS with an activation date of August 2018. The address provided to AT&T also matched SOLIS's listed address within the aforementioned incident report.

## SEARCH OF SCOTT TELEPHONES

12. On August 12, 2021, the day of the Vandale Place search warrant, agents also conducted searches of several properties associated with SCOTT. During these searches agents seized several mobile telephones believed to belong to SCOTT. While reviewing the saved contacts and communication logs within these devices, agents found two Texas based telephone numbers (956) 329-9903 and (956) 923-3580.

13. The telephone number ending in 9903 has a listed subscriber of Isreal RAMIREZ. Agents have not been able to obtain subscriber information related to the second of these telephone numbers (ending in 3580). To date agents have not been able to identify any legitimate (non-drug trafficking related) relationship between SCOTT and anyone in living in Texas. Based on my training and experience, and my knowledge of this DTO and SCOTT (including the 60-days of SCOTT's calls which were intercepted during the T-III investigation), I believe the purpose for SCOTT's contact with these Texas numbers is to facilitate narcotics transactions.

## CURRENT INVESTIGATION
## GRAND JURY

14. On February 8, 2022, the Federal Grand Jury indicted SOLIS for conspiracy to possess with intent to distribute cocaine along with numerous other members of the DBDTO.

## GEO-LOCATION DATA

15. On February 9, 2022, United States Magistrate Jacquelyn Austin signed a warrant authorizing agents to obtain historical geo-location data relative to SOLIS TELEPHONE. This data showed that SOLIS frequently traveled between various states. A subsequent order was signed authorizing agents to receive current geo-location information related to SOLIS TELEPHONE.

## ARREST OF SOLIS

16. On February 23, 2022, DEA agents in Greenville, SC coordinated with DEA agents based out of Columbus, Georgia to locate and arrest SOLIS pursuant to his outstanding federal arrest warrant. Agents reviewed geo-location data from SOLIS TELEPHONE and that data led them to JVL Laboratories Inc., 3784 Opelika Road, Phoenix City, Alabama. When agents arrived on scene, they located an Ariyah Logistics tractor-trailer and determined SOLIS was the sole occupant of the vehicle.

17. Agents conducted surveillance and when the tractor-trailer left the business Alabama State Trooper Jonathan Hastings conducted a traffic stop on the vehicle. SOLIS was arrested pursuant to the federal warrant. Following his arrest, Lee County Sheriff's Deputy Lee Fleming deployed his K-9, who altered to the odor of narcotics coming from the tractor-trailer. Agents then searched the tractor and trailer but did not find any illegal substances. Also, during the search, SA Jeffrey Gobin seized two cell phones (the TARGET DEVICES) from the cab of the truck. SOLIS was transported to the federal courthouse in Columbus, Georgia and the phones were shipped to the DEA office in Greenville, SC.

18. At the time of SOLIS' arrest the geo-location data placed SOLIS TELEPHONE on scene at the arrest. Based on this location data and the common area codes between telephone numbers found in SCOTT's devices and the SOLIS TELEPHONE (which I believe is one of the TARGET DEVICES) I believe a search of the TARGET DEVICES will expose communication between SOLIS and other conspirators. Based on all investigative efforts to date agents have not found any reason for SOLIS to be on contact with other members of this DTO.

## AFFIANT'S BELIEF

19. Based on my training and experience I believe the Texas numbers in SCOTT's telephones are contact numbers for one of the TARGET DEVICES or another conspirator working with SOLIS and SCOTT. Since a bag containing 8 kilograms of cocaine with SOLIS's fingerprints was located in the trunk of a car that SCOTT purchased through his business with SCOTT's fingerprints on the trunk, I believe that SOLIS was involved in

7

the delivery of the 8 kilograms of cocaine to SCOTT or one of his coconspirators.

20. Further, since SOLIS was arrested in October 2021 in a tractor-trailer with a hidden compartment and a drug detecting K-9 alerted on the truck SOLIS was driving during his arrest in February 2022 when the TARGET DEVICES were located, I believe SOLIS was actively involved in the drug trafficking conspiracy up to the date of his arrest.

21. I know based on my training and experience narcotics couriers typically maintain contact with their supervisors and sub-distributors while transporting narcotics. For these reasons I believe the content within the identification numbers contained within the TARGET DEVICES, call logs, saved contacts and the data stored within communication applications on the TARGET DEVICES will reveal additional communication between SOLIS and other conspirators within this DTO.

## ITEMS TO BE SEIZED

22. Based upon the aforementioned facts, I believe there is probable cause to believe that the following data (which agents believe to be evidence of violations of Title 21 USC 846) will be found in a search of the TARGET DEVICES, and constitute evidence of the aforementioned offenses further described in Attachment B.

    a. Electronic directories which denote the names (or pseudonyms), photographs, telephone numbers, e-mail addresses or other contact information of coconspirators.

    b. Electronic call logs, denoting calls (placed, answered, or unanswered) made from or received by the respective device, which could demonstrate patterns or relationships with other telephone numbers, which could constitute evidence of criminal activity.

    c. Electronic GPS data denoting locations historically visited by the device(s).

  d. Text or voicemail messages containing communications demonstrating evidence of a drug trafficking conspiracy to included communication attempted or conducted through downloaded applications.

  e. Photographs and videos (and the metadata associated with photos or videos, denoting information such as the date, time, and location where a certain electronic file was created) of drugs, drug proceeds, or other potentially incriminating items (i.e. drug paraphernalia, criminal associates, automobiles, locations including but not limited to stash houses, etc.).

23. Based on the aforementioned facts, I respectfully request that a search warrant be issued for the TARGET DEVICES.

*s/Matthew McDonald*
MATTHEW McDONALD
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION

SWORN TO ME VIA TELEPHONE OR
OTHER RELIABLE ELECTRONIC MEANS
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE

This **18th** day of April 2022
Greenville, South Carolina

*[signature]*
JACQUELYN D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is:

    a.    A Black Samsung Cellphone SM-F711U, S/N R5CRC4C4FTB, IMIE 1: 350345703952163

    b.    A Black Samsung folding phone

The TARGET DEVICES were found during the arrest of Arturo SOLIS and are currently located in secure storage at DEA in Greenville, South Carolina. This warrant authorizes the forensic examination of the TARGET DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records stored/recorded on the TARGET DEVICES described in Attachment A that relate to or constitute evidence of violations of Title 21, United States Code, §§ 841, 843 and 846, and involve SOLIS or any other coconspirator including but not limited to:

    a.  Electronic directories which denote the names (or pseudonyms), photographs, telephone numbers, e-mail addresses, etc. of coconspirators.
    b.  Electronic call logs, denoting calls (placed, answered, or unanswered) made from or received by the respective device, which could demonstrate patterns or relationships with other telephone numbers, which could constitute evidence of criminal activity.
    c.  Electronic GPS data denoting locations historically visited by the device(s).
    d.  Text or voicemail messages containing communications demonstrating evidence of a drug trafficking conspiracy to included communication attempted or conducted through previously downloaded applications.
    e.  Photographs and videos (and the metadata associated with photos or videos, denoting information such as the date, time, and location where a certain electronic file was created) of drugs, drug proceeds, or other potentially incriminating items (i.e. drug paraphernalia, criminal associates, automobiles, locations including but not limited to stash houses, etc.).